FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 MAR 3 PM 2 19

STEPHAN HARRIS, CLERK
CHEYENNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JAMES A. SPREITZER,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. WOODALL; HEATHER M. MCGINLEY; JAMES H. WOODALL, PLLC; DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for AMERIQUEST MORTGAGE SECURITIES, INC.; HOMEWARD RESIDENTIAL, INC.; DAVID APPLEGATE; AMERIQUEST MORTGAGE COMPANY; and DEFAULT RESOLUTION NETWORK, LLC,<br><br>Defendants. | Case No. 1:12–CV–00206–ABJ |

---

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND HIS COMPLAINT**

---

In response to receiving foreclosure notices, Plaintiff filed RICO and FDCPA claims against multiple defendants and filed for declaratory relief seeking to quiet his title. The original mortgage company, the mortgage assignee, the mortgage servicer, the attorney assisting the mortgage assignee with foreclosure, and other defendants filed motions to dismiss the plaintiff's claims against them. For the following reasons, the Court **GRANTS** their motions and **DENIES** Plaintiff's motion for leave to amend his complaint.

1

## BACKGROUND

On September 19, 2003, Plaintiff James A. Spreitzer ("Plaintiff") executed a Fixed Rate Note ("Note") promising to repay a loan that he received from Defendant Ameriquest Mortgage Company ("Ameriquest"). [ECF No. 65 at ¶ 27; ECF No. 1-1 at 4-6]. After the Plaintiff executed the Note, Defendant Ameriquest indorsed the Note "without recourse." [ECF No. 65 at ¶ 28; ECF No. 1-1 at 6]. This indorsement, as will be analyzed further below, is at the heart of Plaintiff's claims.

The Plaintiff also executed a Mortgage ("Mortgage") which granted Defendant Ameriquest and its "successors and assigns" a power of sale over Plaintiff's residence at 108 Sequoia Drive, Gillette, Wyoming 82718. [ECF No. 65 at ¶ 27; ECF No. 1-1 at 8-22]. The Mortgage was duly recorded on September 29, 2003, and it specifically provides that the Note and Mortgage may be sold. [ECF No. 1-1 at 22, 18]. Nearly six years later, Defendant Ameriquest assigned ("Assignment") "the described mortgage" and the corresponding Note to Defendant Deutsche Bank National Trust Company ("Deutsche Bank"), which was acting as trustee for Ameriquest Mortgage Securities, Inc. Asset-backed Pass-through Certificates, Series 2003-11, under the Pooling and Servicing Agreement dated November 1, 2003, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705-4934 ("Ameriquest Certificates"). [*Id.* at 28; ECF No. 70 at 2; ECF No. 81 at 7].

On March 12, 2012, Plaintiff received the first of many notices of intent to foreclose. [ECF No. 65 at ¶ 42; ECF No. 1-1 at 24]. Defendant James H. Woodall ("Woodall") sent the notices on behalf of Defendant Deutsche Bank because Plaintiff had defaulted under the Note and Mortgage. [ECF No. 65 at ¶¶ 42-44; ECF No. 1-1 at 24; ECF No. 70 at 3; ECF No. 79 at 2-3; ECF No. 81 at 8]. Subsequent to these notices, Defendant Homeward Residential, Inc.

("Homeward") sent Plaintiff a letter regarding the loan represented by the Note and the foreclosure. [ECF No. 65 at ¶ 75; ECF No. 70 at 3]. Defendant Homeward is the self-described servicer of the loan evidenced by the Note. [ECF No. 70 at 3].

On August 20, 2012, the Plaintiff received a letter from Defendant Default Resolution Network, LLC ("Default Resolution"). [ECF No. 65 at ¶ 87]. The letter stated that Defendant Homeward had "referred [Plaintiff's] loan to us for foreclosure." [ECF No. 1-2 at 44]. Aside from including the letter and identifying Defendant Default Resolution, the Plaintiff has not alleged any other facts regarding that defendant. [*Id.*; ECF No. 65 at 22].

On September 11, 2012, Plaintiff filed his initial complaint in this case alleging that Defendants James H. Woodall, James H. Woodall, PLLC ("Woodall PLLC"), Heather M. McGinley ("McGinley"), Ameriquest, Deutsche Bank, Homeward, and Default Resolution had violated multiple counts of the Fair Debt Collection Practices Act and the Racketeer Influenced and Corrupt Organizations Act. [ECF No. 1]. Various defendants filed motions to dismiss the original complaint, and Plaintiff filed the instant Verified Amended Complaint ("Amended Complaint"), ECF No. 65, in response.

Shortly thereafter, Defendant Default Resolution filed its Motion to Dismiss the Plaintiff's Verified Amended Complaint. [ECF No. 68]. Ten days later, Deutsche Bank and Homeward filed their Motion to Dismiss the Amended Complaint and an accompanying Memorandum in Support. [ECF Nos. 69, 70]. Shortly thereafter, Defendants Woodall, Woodall PLLC, and McGinley filed their Motion to Dismiss the Amended Complaint and its supporting memorandum. [ECF Nos. 78, 79]. A day later, Defendant Ameriquest filed its Motion to Dismiss the Verified Amended Complaint and its supporting memorandum. [ECF Nos. 80, 81]. Instead of filing a response to these motions to dismiss, Plaintiff filed motions to strike or deny

3

each respective motion. [ECF Nos. 85, 90, 96, 98]. Since motions to strike are disfavored, the Court will examine his motions to strike or deny as though they were responses. Most defendants replied to the motion seeking to strike or deny their motion to dismiss. [ECF Nos. 104, 108, 113, 114]. The Plaintiff responded to those replies (without seeking leave to do so), and he also filed several Judicial Notices to the Court. [ECF Nos. 66, 109, 111, 115, 127, 129].

On May 10, 2013, Paul Knight entered an appearance for Plaintiff, who had proceeded *pro se* until then. [ECF No. 133]. Seven months later, the Court entered orders dismissing several motions as moot and dismissing all claims as to Defendants Campbell County Abstract Company and Barbara S. Redder. [ECF Nos. 134, 135]. Over a month after that, Plaintiff filed a Motion for Leave to File a Second Amended Complaint. [ECF No. 136]. The Defendants filed Responses in opposition. [ECF Nos. 137, 138, 140, 146]. Plaintiff, thereafter, filed his replies. [ECF Nos. 149, 150, 151, 152]. The Court finds that these matters have been thoroughly briefed and are ripe for disposition.

## STANDARD OF REVIEW

In *Ashcroft v. Iqbal*, the Supreme Court articulated a two-step approach for district courts to use when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* 556 U.S. 662, 679 (2009). First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id. Iqbal* clarified that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully but the complaint does not need to establish that the defendant probably acted unlawfully. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

### I.     Fair Debt Collection Practices Act Claims

The Plaintiff has alleged that all Defendants have violated five sections of the FDCPA: 15 U.S.C. §§ 1692f(6), 1692e(2)(A), 1692e(4),(5), and (10). The Court finds that the Plaintiff's claims arise under federal law and that jurisdiction is proper under 28 U.S.C. § 1331.

"The FDCPA prohibits the use of 'abusive, deceptive, and unfair debt collection practices.'" *Maynard v. Cannon*, 401 Fed.Appx. 389, 393 (10th Cir. 2010) (quoting 15 U.S.C. § 1692(a)). "To prevail on a claim under the FDCPA, a plaintiff must prove that a 'debt collector's' effort to collect a 'debt' from a 'consumer' violated some provision of the FDCPA." *Id.* There seems to be no dispute that Plaintiff is a "consumer" as defined by the FDCPA, nor is there a dispute that his mortgage was a "debt" under the FDCPA. *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation of a consumer to pay money arising out

of a" consumer transaction). Instead, Defendants argue that they are not "debt collectors" under the FDCPA, that non-judicial foreclosure actions do not constitute "debt collection activity," and that the Plaintiff has not alleged that they have attempted to collect a debt. [ECF No. 70 at 9; ECF No. 78 at 2; ECF No. 81 at 11; ECF No. 54 at 3].

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the term "debt collector" does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F).

Thus, "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see* S. REP. 95-382, 3-4, 1977 U.S.C.C.A.N. 1695, 1698 ("the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; [or] mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing."); *see also* 173 A.L.R. Fed. 223 § 8.2 (2013 Cumulative Supplement).

In the instant case, Plaintiff executed the Note and the Mortgage on September 19, 2003. [ECF No. 65 at ¶ 26; ECF No. 1-1 at 4-22]. Plaintiff executed both the Note and the Mortgage in favor of Defendant Ameriquest. [ECF No. 1-1 at 4, 8-10]. On January 20, 2009, Citi Residential

Lending, Inc., as Ameriquest's attorney-in-fact, assigned the Note and Mortgage to Defendant Deutsche Bank. [ECF No. 1-1 at 28]. Defendants Woodall, Ameriquest, and Deutsche Bank all state in their motions to dismiss that Plaintiff then defaulted under the Note and Mortgage.

The Plaintiff alleges that he received the first notice of intent to foreclose over three years after the Assignment. He has failed to allege that he was in default prior to the Assignment. Instead, he alleges that the Note, by being indorsed "without recourse," was somehow satisfied and that the later Assignment is therefore "a fabricated, phony, false, sham, fraud on-its-face" document. [ECF No. 65 at ¶¶ 38-40, 8; ECF No. 90]. If the Plaintiff's attack on the Mortgage and Assignment fails, Defendants Deutsche Bank and Homeward were the mortgagee or assignee of the mortgage and the mortgage servicer *before* the debt was in default, and they are not "debt collectors" under the FDCPA. A review of negotiable instruments quickly reveals the unfounded nature of the Plaintiff's FDCPA claims.

First, the Court assumes that Wyoming law applies because the Note and Mortgage were executed in Wyoming and pertain to real property located in Wyoming. [ECF No. 1-1 at 10, 18, 22]. Second, the Note is a "negotiable instrument" under Wyoming law. *See* Wyo. Stat. Ann § 34.1-3-104(a)-(e) (a "[negotiable] instrument is a 'note' if it is a promise); ECF No. 1-1 at 4 ("Borrower's Promise to Pay").

Plaintiff alleges that "[t]he *without recourse* indorsement evidences the 'Lender' was paid all sums secured by the Mortgage." [ECF No. 65 at ¶ 38 (emphasis in original); *see id.* at ¶¶ 30, 102]. "Without recourse" is a term of art that Plaintiff misapprehends.

> (a) . . . [I]f an instrument is dishonored, an indorser is obliged to pay the amount due on the instrument (1) according to the terms of the instrument at the time it was indorsed. . . . The obligation of the indorser is owed to a person entitled to enforce the instrument or to a subsequent indorser who paid the instrument under this section.

> (b) If an indorsement states that it is made *"without recourse"* or otherwise
> disclaims liability of the indorser, the indorser is not liable under subsection (a) to
> pay the instrument.

Wyo. Stat. Ann. § 34.1-3-415 (emphasis added).

Thus, Defendant Ameriquest's "without recourse" indorsement disclaims their liability to an assignee or subsequent indorser of having to pay the amount due on the Note if the Plaintiff failed to pay. *See* WITHOUT RECOURSE, Black's Law Dictionary (9th ed. 2009) ("one who indorses an instrument ['without recourse'] indicates that he or she has no further liability to any subsequent holder for payment."). Despite what the Plaintiff would like it to mean, a "without recourse" indorsement simply does not have the legal effect of satisfying a note nor does it signify that a note was satisfied. Thus, Ameriquest was not required to release the Note after indorsing it "without recourse," and the Plaintiff has failed to allege sufficient, plausible facts that he was not obligated under the Note and corresponding Mortgage when it was assigned in 2009.

Plaintiff's primary premise for attacking the Assignment thereby fails. He also alleges that the Assignment is fraudulent because any valid assignment "was required to be deposited in the [Ameriquest Certificates] on or prior to the Closing Date" of November 12, 2003. [ECF No. 65 at ¶ 56]. In response, the Defendants initially argue that Plaintiff has no standing because he was not a party to the Assignment. That seems to be an overly broad statement. "A debtor may, generally, assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment, any matters rendering the assignment absolutely invalid or ineffective, and the lack of the plaintiff's title or right to sue; but, if the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes." 6A C.J.S.

Assignments § 132. Thus, if the assignment was effective to pass legal title, Plaintiff cannot object to any deficiencies that might make it voidable.

A valid assignment requires a perfected transaction between an assignor and an assignee "and acts or words indicating an intent to transfer a present interest in the subject matter of the assignment." 6A C.J.S. Assignments § 57. Here, the Assignment clearly identifies Citi Residential Lending, Inc. as the attorney-in-fact of the assignor, Defendant Ameriquest, and the assignee, Deutsche Bank acting as Trustee for the Ameriquest Certificates. [*See* ECF No. 1-1 at 28]. On its face, the Assignment clearly identifies the Mortgage and transfers the Mortgage, the Note, the security interest created by the Mortgage, and "all liens, and any rights due or to become due." [*Id.*]. The Mortgage itself does not have an anti-assignment clause. Instead, it specifically anticipates the future sale or assignment of the Note and Mortgage. [*Id.* at 18 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.")].

Instead of challenging any of these basic aspects of the Assignment, Plaintiff alleges that the Ameriquest Certificates could not have legally accepted his mortgage. In support of this allegation, Plaintiff alleges one fact: that the "Closing Date" for the Ameriquest Certificates in the Pooling and Servicing Agreement ("PSA") was November 12, 2003. [ECF No. 65 at ¶ 56]. He also alleges a legal conclusion, which is not entitled to the *Iqbal* assumption of truth: that any valid assignment must have been deposited with the Ameriquest Certificates before the Closing Date in order for such an assignment to be legally assigned to the Ameriquest Certificates. [*Id.*]. Plaintiff repeatedly alleges this conclusion, *see* ECF No. 1-1 at 32-37, but he fails to allege any facts that would support a plausible claim that the Assignment is void. Thus, he lacks standing to challenge the Assignment under the PSA. Several courts have similarly held that debtors lack

standing to challenge a mortgage assignment based upon alleged non-compliance with a PSA. *See McLaughlin v. Wells Fargo Bank, N.A.*, 2012 WL 5994924 (C.D. Cal. 2012); *Sami v. Wells Fargo Bank*, 2012 WL 967051 (N.D. Cal. 2012); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011).

Thus, Plaintiff's secondary attack against the Assignment fails, and the Court is left with the conclusion that he has failed to allege a plausible claim under the FDCPA. Defendant Ameriquest is not a "debt collector" because it was the originator of the debt, and Plaintiff has failed to allege any facts that Defendant Ameriquest was "collecting or attempting to collect" a debt. *See* 15 U.S.C. § 1692a(6)(F)(ii). Defendants Deutsche Bank and Homeward are not "debt collectors" under the FDCPA because the Plaintiff has failed to plausibly allege that they were not the assignee of the mortgage and the mortgage servicer before the debt was in default. *See* 15 U.S.C. § 1692a(6)(F)(iii).

Defendant Woodall and Woodall PLLC are not "debt collectors" under the FDCPA because Plaintiff has failed to plausibly allege that they were doing anything other than "attempting to collect" a debt owed to another to the extent the debt "was not in default" when it was obtained by Defendant Deutsche Bank. Aside from conclusory allegations identifying her in ¶ 10, the Plaintiff has failed to allege any facts that Defendant McGinley did anything to violate the FDCPA. *Cf.* ECF No. 135.

Lastly, the Plaintiff has only alleged conclusory allegations against Defendant Default Resolution. *See* ECF No. 65 at ¶¶ 21, 87, 88. Much like his allegations as to Defendant McGinley, he has failed to allege sufficient facts that Defendant Default Resolution violated the FDCPA in any way. Counts One through Five of Plaintiff's Verified Amended Complaint rely on all Defendants being "debt collectors" under the FDCPA or otherwise violating the FDCPA,

*see* ECF No. 65 at ¶¶ 118, 128, 135, 142, 149; therefore, these counts fail to state a claim upon which relief can be granted.   Thus, the Court **GRANTS** Defendants' motions to dismiss, ECF Nos. 68, 69, 78, 80, as to these counts and **ORDERS** that Counts One through Five of ECF No. 65 are **DISMISSED** as to all Defendants.   Because the Court grants Defendants' motions to dismiss, it also **DENIES** Plaintiff's motions to strike or deny, ECF Nos. 85, 90, 96, 98, the respective motions.

## II.     Racketeer Influenced and Corrupt Organizations Act Claims

Defendants' motions to dismiss next argue that Plaintiff's Complaint fails to state a RICO violation claim.

> "RICO provides a cause of action for those injured in business or property by reason of prohibited racketeering activities." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).   Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."   A § 1962(c) claim thus has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Bixler*, 596 F.3d at 761 (quotations omitted).
>
> The fourth element—racketeering activity—"is defined ... as any 'act which is indictable' under federal law," *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (quoting 18 U.S.C. § 1961(1)(B)), and includes extortion, mail fraud, wire fraud, and bank fraud. An act of extortion under state law punishable by more than one year in prison also is a racketeering activity. *See* 18 U.S.C. § 1961(1)(A).   "These underlying acts are referred to as predicate acts, because they form the basis for liability under RICO." *Tal*, 453 F.3d at 1261 (emphasis added) (quotations omitted).   A plaintiff must prove that a defendant engaged in at least two predicate acts to satisfy the "pattern" element of a RICO claim. *See id.* at 1267.

*Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 887-88 (10th Cir. 2012).

The Plaintiff's Verified Amended Complaint alleges that Defendants violated 18 U.S.C. §§ 1951 (extortion) and 1341 (mail fraud) as the predicate acts for RICO liability.

### A.     Extortion

There are two essential elements to a § 1951 charge: "interference with commerce, and extortion. Both elements must be charged." *Stirone v. U.S.*, 361 U.S. 212, 218 (1960). "The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In the instant case, Plaintiff has alleged that the "Defendants attempted to extort roughly $150,000 from Plaintiff by threatening to sell and seize [his] home under color of official right by and through the use of" the allegedly fraudulent Assignment "which had no enforceable security interest granting Defendants any present right of possession." [ECF No. 65 at ¶ 159].

Plaintiff, in addition to misunderstanding "without recourse" above, also evidently misunderstands "under color of official right." The Tenth Circuit has stated that "[a]n extortion effort made under color of official right is . . . a public official's attempt to obtain money not due him or his office." *United States v. Troutman*, 814 F.2d 1428, 1456 (10th Cir. 1987). The statute's definition of "under color of official right" "repeats the common law definition of extortion, a crime which could only be committed by a public official, and which did not require proof of threat, fear, or duress." *United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir. 1972), cert. denied 409 U.S. 914. Plaintiff has not alleged in any way that any of the Defendants are "public officials." Instead, he has alleged that they are private persons or business entities with various principal offices located in different states. Thus, the Defendants could not have extorted Plaintiff "under color of official right." Count Six of Plaintiff's Verified Amended Complaint, ECF No. 65, is, therefore, **DISMISSED** as to all Defendants.

**B.     Mail Fraud**

"The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003). Fed. R. Civ. P. 9(b) requires that RICO claims based on predicate acts of fraud must be pled with particularity. *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). "Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

In the instant case, the gist of the Plaintiff's allegations is that the Defendants committed mail fraud by mailing letters saying that they would foreclose on Plaintiff's home. The Plaintiff does not specifically identify the "false representation," but, through the incorporation of his previous allegations, the Court surmises that the "false" representation would be that the Note, Mortgage and Assignment were valid and granted Defendants and their agents a right to foreclose on Plaintiff's home. Plaintiff's allegation is premised on the misguided belief that "without recourse" represents a satisfaction of a debt. The Court has already resolved that contention above in Section I; therefore, the Court finds that the Defendants did not make a "false" representation. The Court further finds that the Plaintiff has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b). The Court, therefore, **DISMISSES** Count Seven of Plaintiff's Verified Amended Complaint, ECF No. 65, as to all Defendants.

## III.    Claim to Quiet Title

In Count Eight of his Verified Amended Complaint, Plaintiff alleges that Defendant Ameriquest's indorsement of the Note "without recourse" "evidences Ameriquest having been

paid in full, thereby releasing the 'Mortgage' and rendering said 'Mortgage" a nullity." [ECF No. 65 at ¶ 182]. He, therefore, requests that the Mortgage and Assignment be struck from the chain of title and that the Court enter an order declaring that he is the only legal and equitable owner of 108 Sequoia Drive in Gillette. [*Id.* at ¶¶ 183, 184, Prayer for Relief]. Defendants move to dismiss his claim.

The "plaintiff in a quiet title action[] has the burden of proof and must stand on the strength of its own title and not on the weakness of the title of defendants." *Kirby Royalties, Inc. v. Texaco Inc.*, 458 P.2d 101, 106 (Wyo. 1969). In the instant case, the Plaintiff has done just the opposite. He has only attacked the Note, Mortgage, and Assignment. He has never alleged that *he* satisfied the Note, and he has not alleged that he is not in default. It is his default that clouds his title. *See Marty v. Mortgage Elec. Registration Sys.*, 1:10-CV-00033-CW, 2010 WL 4117196 (D. Utah 2010) ("Plaintiff is still in default on the loan and it is this that clouds any title owned by [him].") Defendants' motions to dismiss the quiet title action are, therefore, **GRANTED**, and Count Eight of the Amended Complaint, ECF No. 65, are **DISMISSED** as to all Defendants.

## IV.   Plaintiff's Motion to Seek Leave to Amend Complaint

Eight months after entering an appearance for the Plaintiff and over a month after the Court ordered the dismissal of two defendants, Plaintiff's "newly-retained counsel, on behalf of Plaintiff" has filed a motion for leave to file a second amended complaint. [ECF No. 136]. Plaintiff argues that his motion is timely and there would be "no prejudice to any party" if the Court were to grant his motion. [*Id.*]. Defendants have filed responses in opposition to Plaintiff's motion. [ECF Nos. 137, 138, 140, 146]. Defendants argue that Plaintiff's motion is untimely, prejudicial, filed in bad faith, and futile.

Fed. R. Civ. P. 15(a)(2) states that the "court should freely give leave when justice so requires." Granting leave to amend is inappropriate in circumstances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Tenth Circuit, "untimeliness alone is a sufficient reason to deny leave to amend." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). In the instant case, Plaintiff filed his Verified Amended Complaint on October 29, 2012. The instant motion was filed on January 27, 2014, nearly fifteen months later. Plaintiff's "newly-retained counsel" entered his appearance nine months before filing this motion, and, aside from reviewing the prior filings, there is no explanation as to why he could not have sought to amend the complaint earlier. In recent filings, Plaintiff's counsel references a "special counsel," but that individual has yet to seek admission *pro hace vice*. [*See* ECF No. 136 at 2-3; ECF No. 149 at 2-3]. The Court finds that such a delay is untimely. Additionally, Plaintiff only sought the instant amendment after the Court dismissed two defendants by a previous order. [ECF No. 135]. That, in and of itself, appears to be dilatory to the Court.

Further, Defendants Homeward and Deutsche Bank argue that they "would be substantially prejudiced by any further delay in the ultimate disposition of this case." [ECF No. 138 at 7]. The Court agrees. This case is replete with *ad hominem* filings, and those filings have consumed significant judicial resources as well as the resources of all the parties. The Court finds that any further delay would be prejudicial to the resolution of this case and would be contrary to the justice upon which Plaintiff claims to base his motion. His motion for leave to amend, ECF No. 136, is, therefore, **DENIED**.

15

## CONCLUSION

In summary, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted in his Verified Amended Complaint.  [ECF No. 65].  Accordingly, the Court **GRANTS** Defendants' motions to dismiss, ECF Nos. 68, 69, 78, 80, the Amended Complaint and orders that the Amended Complaint be **DISMISSED WITH PREJUDICE** as to all Defendants.  The Court, therefore, also **DENIES** Plaintiff's motions to strike or deny, ECF Nos. 85, 90, 96, 98, Defendants' respective motions to dismiss.  The Court also finds that Plaintiff's motion for leave to amend his complaint is untimely, dilatory, and prejudicial to the administration of justice.  The Court, therefore, **DENIES** his motion, ECF No. 136.

Dated this _____ day of March, 2014.

Alan B. Johnson
United States District Judge